## SLADE v. UNITED STATES.
### No. 1387.

Circuit Court of Appeals, Tenth Circuit.
Sept. 17, 1936.

Edgar C. Jensen, of Salt Lake City, Utah (E. A. Rogers, of Salt Lake City, Utah, on the brief), for appellant.

John S. Boyden, Asst. U. S. Atty., of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Slade and four other defendants were jointly charged by an indictment containing fourteen counts. The first ten counts charged violations of 18 U.S.C.A. § 241; the eleventh count charged a violation of 18 U.S.C.A. § 88; and the twelfth, thirteenth and fourteenth charged violations of 18 U.S.C.A. § 237. All of the defendants except Slade, pleaded guilty.

Slade was convicted on counts seven to ten inclusive, and counts eleven and fourteen. He was sentenced to serve a term of two years on count eleven and three years on count fourteen at the McNeil Island penitentiary, the sentences to run concurrently, and to pay a fine of one dollar on each of the other counts on which he was convicted.

Slade took an appeal on December 10, 1935. On January 4, 1936, the trial court entered an order extending the time for settling and filing the bill of exceptions, until February 1, 1936. On February 1, 1936, the trial court undertook to enter an order further extending such time until March 1, 1936. The second order was ineffectual. See Rule 9 of Appellate Criminal Rules (28 U.S.C.A. following section 723a); Yep v. U. S. (C.C.A.10) 81 F.(2d) 637; Fewox v. U. S. (C.C.A.5) 77 F.(2d) 699; U. S. v. Adamowicz (C.C.A.2) 82 F.(2d) 288.

On February 8, 1936, the court entered an order which read in part as follows:

"It now appearing that through inadvertence and mistake counsel asked for an extension to February 1, 1936, instead of to March 1st, 1936, which date was then intended, and the United States Attorney consenting, and good cause appearing therefor, it is now

"Ordered that said order of January 4, 1936, be corrected and amended so as to read March 1st, 1936, instead of February 1st, 1936."

This order was likewise ineffectual.

While a court has inherent power to amend or correct its records to make them conform to the actual facts,[1] it is without power to change a record so as to make it show that which did not occur or to cure errors or omissions of counsel.[2] The order of February 8, 1936, did not correct a former order to make it speak the truth. The former order was correct. The order of February 8, 1936, undertook to cure the omission of counsel. This the court had no power to do.

It follows that the bill of exceptions and the assignments of error were not filed in time and should not be considered.

The record proper, however, is before us and we may consider alleged errors predicated thereon.

Counsel for Slade contend that count eleven charged a conspiracy to bribe and

---

[1] In re Wight, Petitioner, 134 U.S. 136, 144–147, 10 S.Ct. 487, 33 L.Ed. 865; Moss v. U. S. (C.C.A. 4) 72 F.(2d) 30, 31; U. S. ex rel. Campbell v. Bishop (C.C.A. 5) 47 F.(2d) 95, 96; Cornette v. Baltimore & O. R. Co. (C.C.A. 3) 195 F. 59; McPherson v. State, 187 Ark. 872, 63 S.W.(2d) 282; Carter v. J. W. Silver Trucking Co. (Cal.Sup.) 47 P.(2d) 733, 736; Grand Chapter, O. E. S. v. Wolfe, 175 Ga. 867, 166 S.E. 755; Ellis v. Clarke, 173 Ga. 618, 160 S.E. 780, 782; State v. Branaman, 204 Ind. 238, 183 N.E. 653, 655; A. Doykos & T. Pappas, Inc. v. Leventhal (Mass.) 195 N.E. 348; Bryer v. American Surety Co., 285 Mass. 336, 189 N.E. 109; MacDonald v. Barr, 51 R.I. 337, 154 A. 564; John E. Quarles Co. v. Lee (Tex.Com.App.) 58 S.W.(2d) 77.

[2] Petition of Cohen (D.C.N.Y.) 53 F.(2d) 865, 866; Reed v. Howbert (C.C.A. 10) 77 F.(2d) 227, 229; Tucker v. Hawkins, 72 Ark. 21, 77 S.W. 902, 903; Karrick v. Wetmore, 210 Mass. 578, 97 N.E. 92, 93; State v. Turlok, 76 Mont. 549, 248 P. 169, 173; Haynes v. Los Angeles R. Corp., 80 Cal.App. 776, 252 P. 1072, 1074; Bouldin v. Jennings, 87 Ark. 438, 92 Ark. 299, 122 S.W. 639, 641; Liddell v. Landau, 112 S.W. 1085, 1086. See, also, In re Wight, Petitioner, 134 U.S. 136, 10 S.Ct. 487, 33 L.Ed. 865; Mastrianni v. U. S. (C.C.A. 3) 79 F.(2d) 429.

that where concert is necessary to an offense, such as bribery, conspiracy to commit the substantive offense will not lie. The legal proposition relied on is sound [3] but it has no application here.

Count eleven charged defendants with having conspired together to "corruptly impede and influence the jurors in said case heretofore named, and to corruptly influence, obstruct and impede the due administration of justice therein," and "that it was the object of said conspiracy, * * * that said defendants, or either, or any of them, should corruptly influence and impede said jurors and corruptly influence, obstruct and impede the due administration of justice therein by unlawfully bribing, imparting information to said jurors out of the jury box and by persuasion, arguments and appeals other than those addressed to said jurors by counsel in open court."

The substantive offenses were not bribery but the offenses of influencing a juror and of impeding justice defined in 18 U.S.C.A. § 241; and the persons to be influenced, the jurors, were not parties to the conspiracy.

Counsel for Slade contend that count fourteen is predicated on section 131 of the Criminal Code (18 U.S.C.A. § 237); that it charged bribery of a juror and that bribery of a juror is not embraced within section 131. U. S. v. Sager (C.C.A.2) 49 F.(2d) 725, 727, supports this contention.

The Act of April 30, 1790, 1 Stat. 112, 117, § 21, made it an offense to bribe a judge of the United States and for such a judge to receive a bribe. The punishment prescribed was a fine and imprisonment "at the discretion of the court." The act did not embrace other officers of the United States courts.

The Act of March 2, 1831, 4 Stat. 487, 488, § 2, provided that, "if any person or persons shall, corruptly, or by threats or force, endeavour to influence, intimidate, or impede any juror, witness, or officer, in any court of the United States, in the discharge of his duty, or shall, corruptly, or by threats or force, obstruct, or impede, or endeavour to obstruct or impede, the due administration of justice therein," such person should be punished by a fine not exceeding five hundred dollars or by imprisonment not exceeding three months.

The Act of June 10, 1872, 17 Stat. 378, made it an offense "corruptly, or by threats or force, or by * * * any threatening communications" to "endeavor to influence, intimidate, or impede any grand or petit jury or juror of any court of the United States, in the discharge of his or their duty" or by the same means to "influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein." The punishment prescribed was a fine not exceeding one thousand dollars or imprisonment not exceeding one year, or both.

Such was the state of the pertinent criminal statutes when the Criminal Code was adopted on March 4, 1909. Section 341 of the Criminal Code (35 Stat. 1153) repealed the statutes referred to above.

Section 131 of the Criminal Code (18 U.S.C.A. § 237) reads:

"Whoever, directly or indirectly, shall give or offer, or cause to be given or offered any money, property, or value of any kind, or any promise or agreement therefor, or any other bribe, to any judge, judicial officer, or other person authorized by any law of the United States to hear or determine any question, matter, cause, proceeding, or controversy, with intent to influence his action, vote, opinion, or decision thereon, or because of any such action, vote, opinion, or decision, shall be fined not more than $20,000, or imprisoned not more than fifteen years, or both; and shall forever be disqualified to hold any office of honor, trust, or profit under the United States."

Section 132 of the Criminal Code (18 U.S.C.A. § 238) reads:

"Whoever, being a judge of the United States, shall in anywise accept or receive any sum of money, or other bribe, present, or reward, or any promise, contract, obligation, gift, or security for the payment of money, or for the delivery or conveyance of anything of value, with the intent to be influenced thereby in any opinion, judgment, or decree in any suit, controversy, matter, or cause depending before him, or because of any such opinion, ruling, decision, judgment, or decree, shall be fined not

[3] U. S. v. Sager (C.C.A. 2) 49 F.(2d) 725, 727; U. S. v. Burke (D.C.N.Y.) 221 F. 1014, 1015; U. S. v. Dietrich (C.C. Neb.) 126 F. 664, 667; Curtis v. U. S. (C.C.A. 10) 67 F.(2d) 943, 947. See, also, U. S. v. Katz, 271 U.S. 354, 355, 46 S. Ct. 513, 70 L.Ed. 986.

more than $20,000, or imprisoned not more than fifteen years, or both; and shall be forever disqualified to hold any office of honor, trust, or profit under the United States."

Section 133 of the Criminal Code (18 U.S.C.A. § 239) reads:

"Whoever, being a juror, referee, arbitrator, appraiser, assessor, auditor, master, receiver, United States commissioner, or other person authorized by any law of the United States to hear or determine any question, matter, cause, controversy, or proceeding, shall ask, receive, or agree to receive, any money, property, or value of any kind, or any promise or agreement therefor, upon any agreement or understanding that his vote, opinion, action, judgment, or decision shall be influenced thereby, or because of any such vote, opinion, action, judgment, or decision, shall be fined not more than $2,000, or imprisoned not more than two years, or both."

Section 135 of the Criminal Code (18 U.S.C.A. § 241) in part reads:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

■ Sections 131, 132 and 133, supra, are in pari materia. They are correlative in

that section 131 makes it an offense to give, and sections 132 and 133 make it an offense to receive a bribe. They should be read and construed together.[4]

■ Section 131 makes it an offense to bribe certain persons occupying official relation with a United States court.

Section 132 makes it an offense for one of such persons, namely a judge, to receive a bribe.

Section 133 makes it an offense for the remainder of such persons to receive a bribe.

While section 131 describes such persons generally, and sections 132 and 133 describe them with more particularity, both deal with persons "authorized by any law of the United States to hear or determine any question, matter, cause, proceeding, or controversy," and both deal with corruptly influencing such person's "action, vote, opinion, or decision."

Section 133 mentions a juror specifically. Surely Congress did not intend to make it an offense for a juror to receive a bribe, but to let the giver of the bribe go unpunished.

When the three sections are read together, we think it plain that Congress intended to embrace jurors in the phrase in section 131, "or other person authorized by any law of the United States to hear or determine any question."

■ Against that construction, it is urged that section 135 covers bribery of a juror and that Congress, in a revision of the criminal statutes, would not include the same offense in sections 131 and 135. It will be noted that section 131 covers bribery, while section 135 covers a mere "endeavor" to corruptly influence a juror. It does not need to be a technical attempt to bribe. Any effort or essay to accomplish the evil purpose is within the statute.[5] The latter section also covers threats and force as well as corruption as a means of the en-

---

[4] Chase v. U. S. (C.C.A. 8) 238 F. 887, 894; Kemp Lumber Co. v. Howard (C.C. A. 8) 237 F. 574, 576; Dial v. Chatman (C.C.A. 4) 70 F.(2d) 21, 23.

[5] In U. S. v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553, the court said:

"The word of the section is 'endeavor,' and by using it the section got rid of the technicalities which might be urged as besetting the word 'attempt,' and it describes any effort or essay to do or ac-

complish the evil purpose that the section was enacted to prevent. Criminality does not get rid of its evil quality by the precautions it takes against consequences, personal or pecuniary. It is a somewhat novel excuse to urge that Russell's action was not criminal, because he was cautious enough to consider its cost and be sure of its success. The section, however, is not directed at success in corrupting a juror, but at the 'endeavor' to do so. Experimental approaches to the corruption of a

deavor. It also embraces an endeavor to intimidate or impede a juror. It seems clear to us that the two sections embrace separate and distinct offenses.

We conclude the offense charged in count fourteen falls within the provisions of section 131.

Counsel for Slade contend that counts seven, eight, nine, ten and fourteen are predicated on the same transaction, and that the offense charged in each is identical with the offenses charged in the others.

They urge that only one of such counts should have been submitted to the jury and only one punishment should have been imposed thereon.

It will be noted that section 135, supra, defines three distinct classes of offenses:

(1) Corruptly, or by threats or force, or by threatening letter or communication, endeavoring to influence, intimidate, or impede a witness, juror or officer.

(2) By the same means, endeavoring to influence, obstruct, or impede the due administration of justice.

(3) By the same means, influencing, obstructing, or impeding the due administration of justice.

Classes one and two embrace an endeavor to accomplish an evil purpose. Class three embraces the accomplishment of an evil purpose.

Count seven charged that Slade and others corruptly endeavored to impede and influence Burton, a juror, in a cause pending in the District Court of the United States for the District of Utah, by conveying information to the juror that he could make some money if one of the defendants in such pending cause should be acquitted. It charged the offense of endeavoring to influence or impede a juror under section 135, supra.

Count eight charged that Slade and others corruptly influenced, obstructed and impeded the due administration of justice by conveying information to juror Burton, that he could make some money if one of the defendants in the pending cause should be acquitted. It charged the offense of in-

fluencing, obstructing and impeding the due administration of justice under section 135, supra.

Count nine charged that Slade and others corruptly endeavored to impede and influence juror Burton, by promising him $1,000 to decide the issues in such pending cause in favor of Bowers. It charged the offense of corruptly endeavoring to influence and impede a juror under section 135, supra.

Count ten charged that Slade and others corruptly influenced, obstructed and impeded the due administration of justice by promising juror Burton $1,000, to decide the issues in such pending cause in favor of Bowers. It charged the offense of influencing, obstructing and impeding the due administration of justice under section 135, supra.

Count fourteen charged that Slade and others gave juror Burton a promise and agreement to pay him $1,000, "to decide the issues" in such pending cause "in favor of * * * Bowers." It charged the offense of bribery under section 131, supra.

While counts seven and eight were predicated on the same transaction, they charged separate and distinct offenses in law, defined in separate provisions of section 135, supra. The first charged an endeavor to accomplish the evil purpose and falls in class one. The second charged the accomplishment of a different evil purpose and falls in class three.

What we have said of counts seven and eight is also true of counts nine and ten.

While count fourteen was predicated on the same transaction as counts nine and ten, it charged the offense of bribery under section 131, supra.

A plea of autrefois acquit is unavailing unless the offense to which it is interposed is precisely the same in law and in fact as the former one relied upon under the plea.[6]

Two offenses may be distinct in point of law even though they grow out of the same transaction, if one embraces a different element than the other.[7]

---

juror are the 'endeavor' of the section. Guilt is incurred by the trial—success may aggravate; it is not a condition of it."

6 Curtis v. United States (C.C.A. 10) 67 F.(2d) 943, 947; Burton v. United States, 202 U.S. 344, 380, 26 S.Ct. 688, 697, 50 L.Ed. 1057, 6 Ann.Cas. 362; Kel-

ly v. United States (C.C.A. 6) 258 F. 392; Moorehead v. United States (C.C.A. 5) 270 F. 210.

7 See Curtis v. U. S., supra; Burton v. United States, supra; Gavieres v. U. S., 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489; Morgan v. Devine, 237 U.S. 632,

A single act may be an offense against two statutes, and if the offense defined in one embraces an element not included in the other, an acquittal or conviction under one does not exempt the defendant from prosecution and punishment under the other.[8]

Congress may make each separate step in a transaction a distinct offense.[9]

We conclude that counts seven, eight, nine, ten and fourteen charged separate and distinct offenses and that a conviction on one is not a bar to a conviction on the others.

Affirmed.

---

641, 35 S.Ct. 712, 59 L.Ed. 1153; Blockburger v. U. S., 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306.

[8] Gavieres v. U. S., supra; Morey v. Commonwealth, 108 Mass. 433.

[9] Schultz v. Biddle (C.C.A. 8) 19 F.(2d) 478, 480.

In Burton v. U. S., supra, the court said:

"Another point made by defendant is that he could not legally be indicted for two separate offenses, one for agreeing to receive compensation in violation of the statute, and the other for receiving such compensation. This is an erroneous interpretation of the statute, and does violence to its words. It was certainly competent for Congress to make the agreement to receive, as well as the receiving of, the forbidden compensation, separate, distinct offenses. * * * But Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischiefs intended to be reached and remedied."